IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LIBERTY SURPLUS INS. CORP., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-07-706 |
| § | |
| SLICK WILLIE'S OF AMERICA, *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND OPINION**

Liberty Surplus Insurance Corporation filed this declaratory judgment suit against Slick Willie's of America, Inc., 4000, Inc., Slick Willie's USA, Inc., 8471, Inc., Slick Willie's Family Pool Hall of Oklahoma City, Slick Willie's Hollister Pointe, Inc., and Slick Willie's Family Poll Hall, Inc. (together, "Slick Willie's"). Liberty Surplus was the general liability insurance carrier for Slick Willie's, which operates pool halls that serve alcohol. Liberty Surplus seeks a declaratory judgment that it has no duty to defend or indemnify Slick Willie's in five personal injury lawsuits filed against it in state courts in Texas and Oklahoma. Liberty Surplus asserted diversity jurisdiction. Slick Willie's does not dispute that the parties are completely diverse. Slick Willie's does contend that the jurisdictional amount is not satisfied and moves to dismiss under Rule 12(b)(1). (Docket Entry No. 11). Liberty Surplus has responded, asserting that the record shows that the jurisdictional amount

is satisfied. In the alternative, Liberty Surplus asks for leave to conduct jurisdictional discovery. (Docket Entry No. 13, 14). Slick Willie's has replied. (Docket Entry No. 16).

For the reasons explained below, this court denies the motion to dismiss.

**I.     Background**

The five underlying state court lawsuits are:

1.   *John Jacobs v. Slick Willie's Hollister Pointe, Inc.*, Cause No. 2006-35490 in the 280th Judicial District Court of Harris County, Texas;

2.   *Richard Cruz v. Slick Willie's USA, Inc., et al.*, Cause No. 2005-65243 in the 333rd Judicial District Court of Harris County, Texas;

3.   *Tommy L. Dale v. Slick Willie's, Inc.*, Cause No. CJ-2006-7493 in the District Court of Oklahoma County, State of Oklahoma;

4.   *Frank Davis v. 4000, Inc., et al.*, Cause No. CJ-2006-9481 in the District Court of Oklahoma County, State of Oklahoma; and

5.   *Sonja Felan, et al. v. Slick Willie's of America, Inc., et al.*, Cause No. 06-62707-2 in the County Court at Law No. 4, Nueces County, Texas.

Liberty Surplus has submitted copies of each of the underlying state court original and amended petitions. (Docket Entry No. 11, Exs. 6-11). Two of the lawsuits involve vehicle accidents in which the driver was allegedly drunk as a result of alcohol consumed at a Slick Willie's. Two lawsuits involve violence at a Slick Willie's premises. One lawsuit alleges a slip and fall on an icy walkway just outside a Slick Willie's. The following allegations and claims are raised in the suits:

*Jacobs*: a one-car vehicle rollover involving a plaintiff who was "visibly intoxicated" after consuming alcohol at Slick Willie's in Houston, Texas. The plaintiff alleges that he suffered "serious physical damages which required surgery." The plaintiff asserts a claim under the Texas Dram Shop Act as well as for negligence and gross negligence and seeks actual and punitive damages. (Docket Entry No. 11, Ex. 7).

*Cruz*: a parking-lot shooting outside Slick Willie's in Houston, Texas, resulting in the plaintiff's paralysis. The plaintiff alleges negligence and gross negligence in—among other deficiencies—failing to provide adequate security and seek actual and punitive damages. (Docket Entry No. 11, Ex. 6).

*Felan*: a two-car collision resulting in the death of one plaintiff and serious injuries to another. The suit alleges that the driver of the vehicle that hit the plaintiff's car had been drinking at a Slick Willie's in Corpus Christi, Texas, where she was served alcohol although she was obviously intoxicated and allowed to drive away. The plaintiffs allege a claim under the Texas Dram Shop Act as well as negligence and gross negligence and seek actual and punitive damages. The plaintiffs include the estate, spouse, and three children of the deceased. (Docket Entry No. 11, Exs. 11, 12).

*Davis*: a fight in an Oklahoma City Slick Willie's parking lot resulting in "serious bodily injuries" to the plaintiff, including to his face and head affecting "vision, memory and ability to breathe," which will require surgeries. The plaintiff claims that he was injured by a person who was given too much to drink at Slick Willie's despite obvious intoxication. The suit alleges negligence (failure to protect and to provide adequate security)

and negligence per se under the state dram shop act and a right to recover actual damages in "an amount to exceed $10,000"and punitive damages. (Docket Entry No. 11, Ex. 10).

*Dale:* a slip-and-fall on ice or snow on the walkway outside a Slick Willie's in Oklahoma City, resulting in "serious, permanent and progressive injuries" to the plaintiff's leg, wrist, and ribs, requiring medical treatment. The plaintiff seeks actual damages "in excess of Ten Thousand Dollars," plus attorney's fees. (Docket Entry No. 11, Ex. 8, 9).

One case involves a death claim; the other four allege serious injury. The plaintiffs claim a right to recover damages for medical treatment, pain and suffering, disfigurement or impairment, and mental anguish, as well as past wages and loss of future earning capacity. Besides actual damages, the plaintiffs except Dale seek punitive damages. In the two Oklahoma cases, the plaintiffs allege damages in excess of $10,000; in the Texas cases, the plaintiffs did not allege a dollar amount.

Slick Willie's moves to dismiss on the basis that the amount in controversy is less than $75,000. (Docket Entry No. 6). Liberty Surplus responded, pointing to the allegations in the underlying state-court petitions and submitting three additional items of evidence: a $95,000 settlement demand from the underlying plaintiff in the *Jacobs* case; discovery responses in the *Cruz* case stating that past hospital expenses were $222,566.93; and a case-information sheet completed by the plaintiffs' lawyer in the *Felan* case. The case-information sheet asked whether the suit sought monetary damages of more or less than $50,000. The

4

plaintiffs' lawyer checked the box for the larger amount.  (Docket Entry No. 13, Ex. 2-4) .

## II.     The Applicable Legal Standards

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996)).  "Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir.1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981)).  When examining a factual challenge to subject matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir.1997); *see also Clark*, 798 F.2d at 741.  Accordingly, the court may consider matters outside the pleadings.  *See Garcia*, 104 F.3d at 1261.

The burden of establishing federal subject matter jurisdiction is on the party seeking to invoke it.  Although most of the case law regarding the amount in controversy requirement has arisen in the context of removal from state to federal court, the procedures developed in

5

those cases are applied in the context of declaratory judgment actions. "[B]are allegations [of jurisdictional facts] have been held insufficient to invest a federal court with jurisdiction." *Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Colombia v. Dow Quimica de Colombia S.A.*, 988 F.2d 559, 566 (5th Cir. 1993), *cert. denied*, 510 U.S. 1041, 114 S. Ct. 685, 126 L. Ed. 2d 653 (1994) (discussing a removal petition that "merely states, without any elaboration, that 'the matter in controversy exceeds $50,000 '"). Unless the applicable law provides otherwise, the sum claimed by the underlying plaintiff controls if apparently made in good faith. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S. Ct. 586, 590, 82 L. Ed. 845 (1938); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.), *cert. denied*, 116 S. Ct. 180 (1995). When a complaint does not allege a specific damages amount, the party invoking federal jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount. *St. Paul Reinsurance,* 134 F.3d at 1253*; Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). The test is whether it is more likely than not that the amount of the claim will exceed the jurisdictional minimum. *Allen*, 63 F.3d at 1336. The district court must first examine the complaint to determine whether it is "facially apparent" that the claims exceed the jurisdictional amount. If it is not facially apparent, the court may rely on "summary judgment-type" evidence to ascertain the amount in controversy. *Id*. The jurisdictional facts must be judged as of the time the complaint is filed; subsequent events cannot deprive the court of jurisdiction once it has attached. *Manguno*, 276 F.3d at 723; *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000).

For a federal court to decline diversity jurisdiction on the basis that the amount in controversy is inadequate, it must appear to a legal certainty that the claim is for less than the jurisdictional amount. *Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 869 (5th Cir. 2002); *Allen*, 63 F.3d at 1335 (quoting *St. Paul Mercury*, 303 U.S. at 288); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir. 1995).

The amount in controversy in an action for declaratory or injunctive relief is the value of the right to be protected or the extent of the injury to be prevented. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1252-53 (5th Cir. 1998). When an insurer seeks a declaratory judgment as to the coverage provided by an insurance policy, the "object of the litigation" is the policy and the "value of the right to be protected" is plaintiff's potential liability under that policy. *Hartford Ins. Group v. Lou-Con, Inc.*, 293 F.3d 908, 911 (5th Cir. 2002). In a claim for declaratory judgment to indemnify an insurer from claims against the insured, "the amount in controversy is to be measured by the policy limits or by the value of the underlying claim." *Id.* If the amount at issue in the underlying claim is more than the insurance coverage, the amount in controversy is the amount of coverage, not the amount at issue in the underlying claim. *Id.* at 910–11 (citing *C.E. Carnes & Co. v. Employers' Liab. Assur. Corp., Ltd.*, 101 F.2d 739 (5th Cir. 1939)). However, if the insurance coverage exceeds the underlying claim, the amount in controversy "the jurisdictional amount in controversy is measured by the value of the underlying claim—not the face amount of the policy." *Id.* at 911 (citing 14B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 3d § 3710 (3d ed.1998)). "In

addition to policy limits and potential attorney's fees, items to be considered in ascertaining the amount in controversy when the insurer could be liable for those sums under state law are *inter alia* penalties, statutory damages, and punitive damages—not just interest or costs." *St. Paul Reinsurance Co.*, 134 F.3d at 1253.

### III.   Analysis

Slick Willie's cites *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848 (5th Cir. 1999), which held that conclusory allegations that the amount in controversy exceeded the jurisdictional amount are insufficient. While Slick Willie's is correct, Liberty Surplus has not simply made conclusory allegations. Liberty Surplus has submitted copies of the underlying state-court petitions and additional summary-judgment type evidence as to three of the underlying cases. Those petitions and the evidence must be considered, along with the allegations in the complaint and the underlying claims. *Hartford Ins. Group*, 293 F.3d 908 (considering demand letter for attorney's fees and potential liability for allegations in pending state-court suit); *Prime Ins. Syndicate, Inc. v. Soil Tech Distributors, Inc.*, 2006 WL 1823562 (M.D. Fla. June 30, 2006) (considering damages pleadings in underlying claim and what reasonable attorney's fees might be in that action).

Slick Willie's argues that because the policies specify a $25,000 self-insured retention, this amount must be deducted from the amount in controversy. Even if this

argument is correct, it is facially apparent from the underlying state-court petitions that the amount in controversy in this declaratory judgment action will likely exceed $75,000.[1]

In *Pollet v. Sears Roebuck & Co.*, 46 Fed. App'x. 226 (5th Cir. 2002), a tort case removed to federal court, the plaintiff did not allege a specific damages amount. The court found that it was "facially apparent that the amount in controversy more likely than not exceeded $75,000." *Id.* at *2. The plaintiff's state-court complaint alleged "serious and painful injuries, including but not limited to severe injuries to her face, left elbow, left hand, and tail bone." *Id.* at *2. The plaintiff claimed that she "suffered severe physical pain and keen mental anguish, humiliation and embarrassment; and has required medical care for her injuries and serious residuals thereof, she has been disabled in her daily activities and has been handicapped in other activities; she has incurred medical expenses and loss [sic] sums of moneys that otherwise she would have earned, and she continues to have a diminished earnings capacity; she has sustained residual and permanent disabilities and impairments; she may require hospitalization and she will require medical care in the future; these conditions may continue, worsen, or become permanent." The plaintiff requested "all such damages which are reasonable . . . including damages for past and future medical expenses, for past and future lost wages and lost earnings capacity, for pain, suffering and mental anguish, for disability and for the loss of life's pleasures." *Id.* at *2–3. Without additional information,

---

[1] Coverage for personal injury, bodily injury, and "liquor liability" under the policies is $1,000,000 each with an aggregate limit of $5,000,000. (Docket Entry No. 13, Exs. 1–4).

9

the court found that the complaint on its face showed that the amount in controversy exceeded $75,000.

The injuries alleged in the five underlying state cases are as serious or more serious than the injuries alleged in *Pollet*. Even taking into account the $25,000 deductible, the underlying state-court complaints show that the insurer's potential liability exceeds $75,000. The *Felan* case involves the death of one person and serious injuries to another in a "violent" two-car collision involving a driver who was allegedly drunk as a result of alcohol served at Slick Willie's after she was obviously intoxicated. The *Cruz* case involves a plaintiff paralyzed because of a shooting in a Slick Willie's parking lot. In *Jacobs*, the plaintiff had surgery because of injuries in a one-car vehicle rollover resulting from driving while drunk as a result of alcohol served at Slick Willie's, again despite being obviously intoxicated. The *Dale* case alleges "serious, permanent and progressive injuries" to the plaintiff's leg, wrist, and ribs, requiring past and future medical treatment. The *Davis* case involves a plaintiff who suffered facial and head injuries from a fight in a Slick Willie's parking lot. The plaintiffs assert actual damages for past and future medical expenses, pain and suffering, past and future wages, and punitive damages.

In addition to the state-court petitions, which are facially sufficient to show the insurer's potential liability, Liberty Surplus has provided further evidence which shows that the amount in controversy exceeds $75,000. In the *Felan*, *Jacobs*, and *Cruz* cases, Liberty Surplus has submitted evidence of a $95,000 settlement demand in *Jacobs*, over $222,000

in past medical expenses in *Cruz*, and a statement by the plaintiff's lawyer in *Felan* that the case involves claims exceeding $50,000.

The evidence as to the value of the underlying claims shows that three of the cases—*Jacobs, Cruz*, and *Felan*—clearly exceed $75,000, and two of the cases—*Davis* and *Dale*—likely exceed $75,000 in potential liability for Liberty Surplus with respect to the indemnification obligation. In addition, Liberty Surplus has potential liability for defense costs in each of the underlying suits. Even if the $25,000 deductible is disregarded in the jurisdictional analysis, there is ample basis to find that the amount in controversy is satisfied.

Slick Willie's argues that the underlying plaintiffs in the Texas cases have asserted claims that cannot succeed because the Texas Dram Shop Act, Texas Alcoholic Beverage Code § 2.03, precludes them. Slick Willie's similarly argues that the underlying plaintiff in the *Dale* case seeks attorney's fees, which cannot be recovered in a tort case. Slick Willie's asserts that Liberty Surplus's exposure will be reduced because any actual damages will be subject to allocation among multiple defendants. Slick Willie's also points out that Liberty Surplus has asserted in reservation-of-rights letters that the insurance policies may exclude coverage for punitive damages, punitive damages resulting from intentional acts, and bodily injuries that were expected or intended from the insured's standpoint. The issue, however, is not whether the plaintiffs in the underlying cases will ultimately recover on the merits for every cause of action they allege, whether and how much damages they will recover from each of the defendants they have sued, or whether Liberty Surplus will prevail on the coverage positions it may assert. The issue in this Rule 12(b)(1) motion is not whether

Liberty Surplus will succeed on the merits. *See Hartford Ins. Group*, 293 F.3d 908 (discussing potential asbestos damages claims against insured). The amount in controversy, established by the underlying state-court petitions and the additional evidence submitted, exceeds $75,000.

Liberty Surplus has met its burden of showing federal diversity jurisdiction. The motion to dismiss is denied.

SIGNED on June 21, 2007, at Houston, Texas.

                                    _____
                                            Lee H. Rosenthal
                                       United States District Judge